In re Baker.

[Cite as In re Baker, 18 Ohio App. 2d 276.]

(No. 266—Decided February 7, 1969.)

GRAY, J.  This cause is in this court on appeal on questions of law from an adjudication that Michael Lee Baker is a juvenile delinquent, and, it further appearing to the Juvenile Court that Baker is a male child over 16 years of age and has committed an act which, if committed by an adult, would be a felony, he was committed to the care of the Ohio State Reformatory at Mansfield, Ohio.  Section 2151.35 (E), Revised Code.

Baker, feeling aggrieved thereby, filed his notice of appeal and alleges the following errors:

"1. The finding of the court that defendant was a delinquent on the evidence presented in light of the affidavit was contrary to law.

"2. The sentence imposed by the court in imposing an

indefinite commitment to Mansfield State Reformatory is contrary to law and deprives the defendant of equal protection and due process under the Constitution of the United States, and state of Ohio.

"3. The court erred in admitting certain evidence obtained from the person of the defendant pursuant to an unlawful arrest and violation of the defendant's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

"4. The entire proceeding deprived the juvenile of due process under the Fourteenth Amendment to the Constitution of the United States.

"5. Other errors apparent on the face of the record."

The pertinent part of the complaint filed against the juvenile is as follows:

"* * * Michael Lee Baker age 17 years who appears to be a delinquent child, in that he did knowingly sell or make available to minors under 16 years of age a drug or powder containing an ingredient deleterious to health, specifically a substance containing a preparation of the poisonous compounds belladonna and stramonium; said substances being capable of causing complete confusion with hallucinations, contrary to Sections 3719.31, 3719.32 and 3719.42 of the Revised Code of the state of Ohio. * * *"

The complaint was dated December 29, 1967. Baker became eighteen years of age January 10, 1968. His hearing occurred on March 27, 1968, and his commitment to the Ohio State Reformatory was ordered on April 10, 1968.

Baker had his case heard as a juvenile. Section 2151.35, Revised Code.

The gist of the charge is that the juvenile gave and made available "Asthmador," a proved hallucinogen when taken orally, to other juveniles to be introduced into the body of other juveniles. Baker gave three other juveniles a teaspoonful of powder each in exchange for fifty cents. Two of these juveniles orally introduced the powder into their bodies.

The directions for the use of "Asthmador" state that one-half to one teaspoonful be placed on a plate or saucer. It is then directed that the powder be ignited and the vapor

or smoke therefrom be inhaled into the lungs. This is intended to relieve the distress of bronchial asthmatic paroxysms.

On the front of the metal box containing the powder it is stated:

"To be burned and inhaled only."

On the back of the metal box at the top and in large letters there is also stated:

"DIRECTIONS—USED BY INHALATION ONLY.
"DO NOT TAKE INTERNALLY."

In smaller type there is stated:

"Keep all medicine out of the reach of children."

The testimony of Michael Eugene McCune, age 15½ years, was to the effect that at the home of Mick Mowery, at a party which lasted all night, in the month of December 1967, Baker gave McCune a teaspoonful of a greenish brown powder, the color of "Asthmador," and McCune put the powder in his mouth and swallowed it and drank water after taking it. McCune testified that Mick Mowery, age 15½, paid money for some of the same powder, took it orally and used water afterwards.

Further testimony of McCune is as follows:

"Q. At the time that you paid the fifty cents, what did you think the powder was? A. I didn't know what it was. Mike told me what it was supposed to do.

"Q. What did Mike tell you it was supposed to do? A. *Supposed to put you on a trip and supposed to give you hallucinations.*

"Q. Did he give it any name? A. 'Mr. X' I think.

"Q. He called it by the name 'Mr. X'? A. Yes.

"Q. Did he use any other name? A. No." (Emphasis added.)

Baker contends that since "Asthmador" can be purchased without prescription by signing the "poison book" he has not violated any of the sections of the law pertaining to possession or use of poisons or hallucinogens.

Section 3719.40, Revised Code, is as follows:

"* * * 'Hallucinogen' means d-lysergic acid diethylomide, commonly known as LSD, N-N-dimethyltryptamine, commonly known as DMT, psilocybin, mescaline, peyote,

bufotenin, epena, parica, ayahuasca, yage, caapi, amanita muscaria, and any other compound, mixture, preparation, or substance which produces hallucinations or illusions when introduced into the body."

Section 3719.41, Revised Code, is as follows:

"No person shall with intent to produce hallucinations or illusions, purchase, use, possess, or have under his control an hallucinogen. Possession or control of any hallucinogen specifically named in Section 3719.40 of the Revised Code constitutes prima-facie evidence of a violation of this section, except that this section does not apply to the use, possession, or control of any hallucinogen by licensed manufacturers, wholesalers, pharmacists, owners of pharmacies, physicians, and other persons, for research, clinical or medicinal purposes authorized by federal law or any rules or regulations adopted pursuant thereto."

In interpreting the intent of the Legislature in passing those two sections, we come to the conclusion that the Legislature intended that possession, use, purchase, or control of any of the hallucinogens specifically mentioned is prima facie a violation of Section 3719.41, Revised Code. However, a reading of those two sections shows that the Legislature did not limit hallucinogens to those specifically listed in Section 3719.40, because the Legislature added this language to that section:

"* * * and any other compound, mixture, preparation, or substance which produces hallucinations or illusions when introduced into the body."

That language means that other preparations can be hallucinogens even though not specifically mentioned. In the latter category a prima facie case is not made out by purchase, use, possession, or control of a hallucinogen, but the preparation may be a hallucinogen by proof. In this case it was proved by competent expert testimony that "Asthmador" when taken into the body could produce hallucinations and that when hallucinations occurred in this manner a person in such a state was one step from death.

The record shows that Roydon Bunthoff, a boy of 13, purchased a teaspoonful of "a powder" for the sum of fifty

cents from Baker. It was turned over to the police. It was analyzed by a drug chemist employed by the Ohio Department of Agriculture, who testified that the powder purchased by Bunthoff from Baker was "Asthmador."

The drug chemist testified that the teaspoonful of "Asthmador" sold by Baker to Bunthoff contained 9.8 milligrams of stramonium alkaloids. It was further testified to by the chemist and a medical doctor that any dosage between five and ten milligrams of alkaloids when taken internally would produce mania, delusions and hallucinations.

Bunthoff testified that he purchased the powder to make himself feel good.

We are of the opinion that, under the facts developed in the record, Baker was a delinquent and that he committed acts which if committed by an adult would be a felony, and thus his commitment to the Ohio State Reformatory was legal and proper.

Section 3719.44, Revised Code, provides, in part, as follows:

"No person shall:

"* * *

"(B) Possess for sale any hallucinogen except in accordance with Sections 3719.40 to 3719.49, inclusive, of the Revised Code, or conspire with another person or persons to violate Section 3719.43, division (C) or (E) of Section 3719.44, or Section 3719.47 of the Revised Code;

"(C) Induce or attempt to induce another person to unlawfully use or administer any hallucinogen; or employ, induce, or use a minor to unlawfully transport, carry, dispense, produce, or manufacture any hallucinogen; or induce or attempt to induce a minor to violate any of the provisions of Sections 3719.40 to 3719.49, inclusive, of the Revised Code; or induce or attempt to induce a minor to use any hallucinogen except in accordance with a prescription issued by a physician;

"(D) Sell, barter, exchange, or give away, or make offer therefor, any hallucinogen except in accordance with Sections 3719.40 to 3719.49, inclusive, of the Revised Code.

"(E) Unlawfully dispense or administer any hallucinogen to a minor."

Assignment of error number one is overruled.

We now come to the consideration of assignment of error No. two.

Section 2151.35 (E) has been held to be constitutional by the Supreme Court of Ohio in *In re Darnell,* 173 Ohio St. 335, and in *Cope* v. *Campbell, Sheriff,* 175 Ohio St. 475.

Baker was over eighteen when he had his hearing in the Juvenile Court, and was found to be a delinquent child and ordered committed to the Ohio State Reformatory; therefore, he was not a "child" under the definition thereof as contained in Section 2151.01, Revised Code.

Baker did not object to the form of the proceedings. Neither Baker nor his attorney requested that Baker be tried as an adult. He could have been so tried. Section 2151.26, Revised Code.

It must be remembered that Baker was being tried as a juvenile under the rules of procedure and the rules of evidence that pertain to such hearings.

The Constitution of Ohio proscribed only cruel and unusual punishment. Baker was ordered committed to the Reformatory for reformation. *Cope* v. *Campbell, Sheriff,* 175 Ohio St. 475, 478.

Section 5143.04, Revised, provides, in part, as follows:

"* * * The superintendent shall provide for the education of such child in such branches of industry, agricultural or otherwise, as he shall determine, having in view his reformation and preparation for usefulness. * * *"

See *Prescott* v. *State,* 19 Ohio St 184, 187, and *Leonard, Supt.,* v. *Licker,* 3 Ohio App. 377.

Power to prescribe the place of commitment is exclusively in the Legislature and is not shared by courts so long as constitutional provisions are not infringed. In such cases it has been said that the will of the Legislature is absolute. Stated in another way, the wisdom or expediency of the statute is a matter for the Legislature. Correctional and penal institutions are under the control and adminis-

tration of the executive branch of the government. Courts cannot enter this thicket. They cannot prescribe the type of training and the methods of rehabilitation used. The doctrine of separation of powers requires this result. The fact of the matter is that Baker, being over the age of eighteen years at the time of his trial and commitment, could not have been ordered committed to any other institution.

This assignment of error is overruled.

Baker contends, in assignment of error No. three that his constitutional rights were violated in that he was arrested without a warrant, without the arresting officer observing him violating any statute, and that a quantity of "Asthmador" was found on his person, which compound was admitted, over objection, into evidence.

From an examination of the record, it appears that the can of "Asthmador" was taken from the person of Baker and introduced into evidence as state's exhibit No. 5. No further reference to state's exhibit No. 5 is made in the record.

It is presumed that the Juvenile Court Judge would reject any incompetent and prejudicial evidence and only consider the competent and relevant evidence. A reviewing court may not presume that the trial court deliberately committed error. *State* v. *White* 15 Ohio St. 2d 146.

In any event, if Baker wanted to preserve the question relating to the introduction of state's exhibit No. 5, he should have availed himself of the procedure outlined in the first paragraph of the syllabus in *State* v. *Davis*, 1 Ohio St. 2d 28:

"Where there has been an illegal search and seizure of evidence tending to incriminate an accused and such accused and his counsel know about such search and seizure in ample time to prepare and file a pretrial motion to suppress such evidence, a failure to do so will amount to a waiver by the accused of his right to object to admission of that evidence against him."

The Supreme Court of the United States, in the case of *In re Gault*, 387 U. S. 1, 18 L. Ed. 2d 527, 87 S. Ct.

1428, decided May 15, 1967, held that juvenile delinquency proceedings which may lead to commitment to a state institution must measure up to at least the following essentials of due process and fair treatment:

(1) Written notice of the specific charge or factual allegations, given to the child and his parents or guardian sufficiently in advance of the hearing to permit preparation;

(2) Notification to the child and his parents of the child's right to be represented by counsel retained by them, or, if they are unable to afford counsel, that counsel will be appointed to represent the child;

(3) Application of the constitutional privileges against self-incrimination; and

(4) Absent a valid confession, a determination of delinquency and an order of commitment based only on sworn testimony subjected to the opportunity for cross-examination in accordance with constitutional requirements.

Written notice of the specific charge together with factual allegations were given the juvenile and his guardian. The accused was offered appointed counsel which he declined, and he retained one of his own choice. His constitutional privileges against self-incrimination were observed. No confession was introduced into evidence, nor was the existence of one alluded to. A determination of juvenile delinquency and an order of commitment was made based only on sworn testimony subjected to searching cross-examination. In this connection, it must be observed that defendant did not introduce any evidence whatsoever to offset that offered by the prosecution.

Upon an examination of the record we are of the opinion that the guidelines laid down above in the case of *In re Gault* were met.

The Supreme Court of Ohio has repeatedly held, and in *Dowell* v. *Maxwell, Warden,* 174 Ohio St. 289, at 290, said:

"* * * Any defect or irregularity in either the arrest or preliminary examination does not affect the validity of the accused's conviction. [Cases cited.] * * *"

We believe that we have treated assignment of error No. four in our comments on the other assignments of error. We find that none of the assignments of error is well taken. Therefore, the judgment of the Juvenile Court is affirmed.

*Judgment affirmed.*

ABELE, J., concurs.

CARLISLE, P. J., concurring in part and dissenting in part. I must respectfully dissent from the majority opinion in this case for the reason that I am firmly convinced that you cannot, judicially, in one breath treat a child as a child, and in the next breath treat him as an adult. My position is that I concur in the finding of the trial court that Michael Lee Baker was a delinquent child within the meaning of the statute, and he should have been sentenced accordingly. However, that part of the statute referred to in the majority opinion, which empowers the Juvenile Court Judge to imprison in the Mansfield Reformatory for an indefinite term, is unconstitutional for the reason that if such child is to be treated as an adult he is entitled to all the rights, privileges and immunities of an adult. A long dissertation in this appeal would be of no avail, but certainly we should treat children with more leniency than, or certainly with as much leniency as, we treat adults. I would, therefore, hold that part of Section 2151.-35 (E), Revised Code, is, and should be, declared unconstitutional; and this case deserves to go to the Supreme Court of Ohio, and later on to the Supreme Court of the United States. The case of *In re Gault,* 387 U. S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428, does not deal in any way with the past adjudication or disposition of sentences. I, therefore, feel that this case should be remanded to the Juvenile Court for sentence under the Juvenile Court Act, but in view of the majority opinion that is impossible. And I would like to see it go to a higher court for the questions involved. An illustration of what the dissenting member of this court means in this case is that, if Michael Lee Baker

is to be sentenced as an adult, he is entitled to the benefit of all the decisions protecting the constitutional rights of adults, in a line of cases by the United States Supreme Court, beginning with *Mapp* v. *Ohio,* 367 U. S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A. L R. 2d 933, and continuing with *Gideon* v. *Wainwright,* 372 U. S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A. L. R. 2d 733; *Massiah* v. *United States,* 377 U. S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199; *Escobedo* v. *Illinois,* 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758; *Griffin* v. *California,* 380 U. S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229; *Kent* v. *United States,* 383 U. S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045; *Miranda* v. *Arizona,* 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974; and *United States* v. *Wade,* 388 U. S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926.

In conclusion, it would, therefore, be my view that the case should be remanded to the Juvenile Court for sentence in compliance with the Juvenile Court Act, as I believe that the decision in this case relating to the sentence to the Mansfield Reformatory violates not only the letter but the spirit of the Juvenile Court Act. As a former Juvenile Court Judge, many years ago, I am indeed proud of the fact that not a single juvenile who came before me as such was ever later committed to a penal institution for adults. Furthermore, a recent decision in the case of *In re J. F.,* 17 Ohio Misc. 40, written by Judge Walter Whitlatch, which I think is good law, holds that when a delinquent child becomes 21 years of age the jurisdiction of the Juvenile Court terminates; also, a recent decision in the case of *State* v. *Coulter,* 17 Ohio Misc. 55, holds that the judgment and sentence should be vacated where the defendant was not advised of his right to counsel; and the United States Supreme Court has held, as we all know, that this provision of the law applies to juveniles as well as to adults.