IN RE SIMS.

(No. 83-01-001—Decided
October 31, 1983.)

*Mr. Paul E. Holtzmuller,* for appellant Roy P. Sims, Sr.

*Mr. Wilfrid G. Dues,* prosecuting attorney, for appellee Preble County Children's Services Bd.

*Mr. Donald Lane,* for appellee Diane Sims.

*Mr. John Petry,* guardian *ad litem.*

*Per Curiam.* This cause came on to be heard upon the appeal from the Court of Common Pleas of Preble County.

On August 16, 1982, Roy P. Sims, Jr. ("Roy, Jr."), a minor, was removed from the custody of his father, Roy P. Sims, Sr. ("appellant" or "Roy, Sr."), his legal

custodian, by a member of the Preble County Sheriff's Department and placed temporarily with the Preble County Children's Services Board ("Children's Services"). On August 18, 1982, a complaint was filed by Linda Maffet, a caseworker with Children's Services, which alleged that the child was dependent and/or neglected in violation of R.C. 2151.03(B) and 2151.04(A), (B) and (C), and which requested temporary custody of the child.

Appellant and his former wife, Diane Sims ("Diane" or "appellee"), the child's natural mother, filed answers denying the allegations in the complaint. However, Diane later withdrew her denial and entered a plea of admitted, which was accepted by the court in a November 2, 1982 entry. An adjudicatory hearing was held on December 8, 1982, and, in an entry of the same date, the trial court found the child to be a neglected child. After a second hearing, custody of the child was awarded to the child's mother. Appellant's timely appeal was subsequently initiated.

Appellant raises eight assignments of error. The facts giving rise to the complaint will be discussed as they become relevant to the resolution of each issue raised by appellant.

## I

Appellant's first assignment of error is as follows:

"The trial court erred to the prejudice of the father-appellant in overruling his motion to exclude the mother and her counsel from participation in the adjudicatory hearing."

As noted above, Diane entered a plea of "admitted" after initially filing an answer denying all the allegations in the complaint. Juv. R. 29(D)(2) requires a party entering such a plea to be informed personally by the court that:

"* * * he is waiving his rights to challenge the witnesses and evidence against him, to remain silent and to in-troduce evidence at the adjudicatory hearing."

Appellant argues that "* * * [t]he clear implication of this language is that a party entering a plea of admitted is thereafter barred from formal participation in the hearing, provided that the plea is accepted."

Appellant's motion to exclude the mother from participating in the adjudicatory hearing on this basis was denied. Diane, through cross-examination, proceeded to introduce evidence prejudicial to appellant.

The state argues that even though Juv. R. 29(D)(2) requires that a party who enters an admission waive his rights to challenge witnesses and evidence against him, to remain silent and to introduce evidence at an adjudicatory hearing, there is nothing barring "participation" by that party in the proceedings.

Diane argues that the trial court had within its discretion the power to enforce the waiver of rights. The father, it is argued, lacks standing to object to the court's permitting the mother to introduce evidence even though she waived her right to do so.

The guardian *ad litem* admits that an error was made, but argues that the error was harmless because "the best interests of the child are what is at stake in such a hearing, and any evidence which contributes in a trustworthy fashion to this end should be heard."

This last argument is clearly erroneous and needs to be addressed. Proceedings concerning allegedly neglected or dependent children are to be bifurcated. Juv. R. 29(F); Juv. R. 34. At the first hearing, or adjudicatory hearing, the *sole* issue is whether the child is neglected or dependent. The Ohio Supreme Court has stated that:

"* * * a consideration of the 'best interests' of the child should not enter into the initial factual determination of dependency [or, we would presume, neglect]. It becomes a proper focus only

when the emphasis has shifted to a consideration of the statutorily permissible dispositional alternatives." *In re Cunningham* (1979), 59 Ohio St. 2d 100, 107 [13 O.O.3d 78].

At an adjudicatory hearing, the burden of proof is upon the state to justify a governmental intrusion into the family unit involving the possible severance of the right of a parent to the custody of his or her children. Juv. R. 29(D) seems to be aimed at those cases in which the issue of neglect or dependency is essentially resolved by the plea of admitted, as the rule permits the court to proceed directly to the dispositional stage of the process once it accepts the plea. Indeed, in what we will call the "normal" case, both parents will have had custody of the child and both will be in position to realistically admit or deny the allegations contained in the complaint. If both admit the allegations, there is little sense in prohibiting the court from moving on to the dispositional stage.

This case does not fit in the "normal" paradigm and is representative of what must be an increasingly familiar fact pattern to caseworkers. The parents are divorced and the complaint alleges that parent A, who has custody of a child of the marriage, has neglected that child or that the child is dependent. Parent B, who may want custody of the child, is a necessary party to the proceeding and is listed on the complaint, and must now respond to charges he or she may know nothing about. Given this situation, should a plea of "admitted" absolutely prohibit parent B from participating in the case? We think not.

While the mother in the case *sub judice* did enter an "admission," it is not really clear what she admitted as she had no knowledge of the facts upon which the allegations of neglect and dependency were based. When appellant denied the allegations in the complaint, the court was *required* to "determine the issues" and "direct the prosecuting attorney or

another attorney-at-law to assist the court by presenting evidence in support of the allegations." Juv. R. 29(E). Indeed, as appellees argue, even after it accepts a plea of admitted, the trial court may:

"* * * hear testimony, review documents, or make further inquiry, as it deems appropriate * * *." Juv. R. 29(D).

Essentially, the trial court is granted a great deal of discretion in the manner in which it chooses to hear the evidence presented. While the court may enforce a waiver of rights, it may also "make further inquiry" and permit a party to introduce evidence despite an admission. That this evidence tended to inculpate appellant rather than exculpate the mother is of no matter as it was intended to prove the allegations of the complaint. (The issue of whether the *substance* of the evidence was properly admissible is a separate issue to be discussed below).

In summary, we do not find appellant's argument that Diane was prohibited from participating in the adjudicatory hearing because she entered a plea of "admitted" to the allegations in the complaint to be persuasive. Accordingly, appellant's first assignment of error is overruled.

## II

Appellant's second assignment of error is as follows:

"The trial court erred to the prejudice of the father-appellant in refusing to grant his request to re-crossexamine [*sic*] witnesses for the State on certain new matters brought out during cross-examination by counsel for the mother following the father's first and only crossexamination [*sic*]."

Following the state's direct examination of its witnesses, appellant was permitted to cross-examine the witnesses, followed by the mother and the guardian *ad litem*, respectively. As the mother's cross-examination was clearly intended to inculpate appellant, appellant's counsel requested the opportunity to recross-

examine a witness for the state on matters brought out by the mother's cross-examination. The court refused to permit appellant to recross-examine the witness.

This was clearly improper. While the adjudicatory hearing based on allegations of neglect and dependency is not a criminal proceeding, valuable rights of the parties are nonetheless at stake. Here, the state essentially alleges that the father's misconduct or the child's condition were such as to permit removal of the child by the government from the father's care. While the father is not a criminal defendant, he was certainly "defending" his ability to properly care for his child. Where allegations of neglect or dependency are hotly disputed, a party must be permitted to adequately respond to the charges, to confront the witnesses against him and to defend his right to the custody of his child.

In this regard, substance must govern over form. While the mother and father are not technically adversaries (*i.e.,* both are defendants), it is clear that the mother wanted custody of the child and introduced evidence on cross-examination of the state's witnesses which furthered this goal. The proper manner of proceeding would be to give appellant the final opportunity to cross-examine the witness in order to properly defend himself.

However, it is also clear that appellant could have called the witness, as on cross-examination, during the presentation of his own case and did not do so. Evid. R. 611(A) gives the trial court broad discretion over the mode and order of interrogating witnesses. We cannot say that the court in this instance abused its discretion. Accordingly, appellant's second assignment of error is overruled.

### III

In his third assignment of error, appellant asserts that:

"The trial court erred to the prejudice of the father-appellant in refusing to admit into evidence certain stipulations entered into by the father and the State."

The state and appellant agreed to stipulate as to certain evidence. The court refused to admit the evidence when Diane's counsel objected to all but one of the stipulations.

This was clearly proper. The natural mother of an allegedly neglected or dependent child is a "party," as defined by Juv. R. 2(16), to an adjudicatory hearing. A stipulation is an agreement among the parties with respect to some matter before the court. *State* v. *Washington* (1978), 56 Ohio App. 2d 129, at 142 [10 O.O.3d 150]. Where all parties do not agree to the proffered stipulation, the court may properly refuse to accept the matter into evidence.

Appellant failed to present witnesses to support the subject matter of the stipulation and did not seek a continuance for the purpose of procuring their attendance. Accordingly, the third assignment of error is overruled.

### IV

Appellant's fourth assignment of error is as follows:

"The trial court erred to the prejudice of the father-appellant in admitting into evidence over his objection irrelevant and incompetent testimony and then relying on such evidence in its Decision adjudicating the child to be a neglected child."

### A

The first issue raised by appellant is apparently one of first impression in this appellate district, *i.e.,* is hearsay evidence admissible at the adjudicatory stage of a neglect and dependency proceeding?

The state's argument in favor of admitting the hearsay evidence in this case is based on Juv. R. 29 which permits juvenile proceedings to be conducted in an "informal manner." See, also, R.C. 2151.35. We cannot accept this argument.

"Informality" does not mean abandoning the procedural and evidentiary rules which guide a court in search of the truth. Indeed, where one's fitness as a

parent is being attacked by the state, where a potential end result is the loss of custody of one's child, and where the adjudication will be based on the resolution of conflicting testimony, the emphasis should be on an accurate search for the truth and not on informality.

The hearsay rule is based, primarily, on the fact that one against whom the hearsay is offered has no opportunity to cross-examine the person with first-hand knowledge to determine whether that witness accurately perceived the event, retained an accurate impression of what he perceived, and is able to convey the perceived data without error. See, generally, McCormick, Evidence (2d Ed. Cleary Ed. 1972) 581, Section 245. While Juv. R. 29 permits an adjudicatory hearing to be "informal," a father or mother defending his or her fitness as a parent in an adversarial and often highly emotional proceeding should not have less protection than a defendant in small claims court. The importance of the parental interests involved demands an accurate determination of the facts surrounding a complaint alleging neglect or dependency and requires substantial compliance with the Rules of Evidence. At least two other appellate districts are in accord with this holding. See *In re Phillips* (Dec. 21, 1978), Franklin App. No. 78AP-371, unreported; *In re Baskett* (Sept. 30, 1981), Hamilton App. No. C-800794, unreported.

In the case at bar, Linda Maffet, a caseworker with Children's Services, testified that certain persons told her that Roy, Jr. "* * * likes to eat bugs. He likes to eat anything that comes close to him, including soap. He needs a lot of guidance in everything." The alleged conduct occurred after the child was taken from the father.

While this evidence was clearly hearsay and, thus, not admissible, we must note that it was not referred to by the court in its entry and that no request for separate findings of fact and conclusions of law was made. Juv. R. 29(F)(3); Civ. R.

52. We must also note that where the trial judge acts as the factfinder, a reviewing court will be slow to overturn an adjudication on the basis of the admission of inadmissible testimony, unless it appears that the court below actually considered such testimony in arriving at its judgment, as the trial judge is presumed capable of disregarding improper testimony. *In re Baker* (1969), 18 Ohio App. 2d 276 [47 O.O.2d 411]. While the evidence in question undoubtedly raised a few eyebrows, there has been no showing that it was relied upon by the court in its decision or that the appellant was prejudiced thereby. However, as there are other grounds which require the reversal of this cause, we would expect the Rules of Evidence to be complied with on remand.

**B**

The next issue raised by the appellant questions the relevancy of any testimony relating to the child's conduct once he was taken out of appellant's custody and placed with Children's Services.

The trial court requested that the state advance testimony as to "* * * how this kid responds to normal treatment, to home treatment * * *" *after* he was taken from the father as the court felt such evidence would be "* * * relevant to what his condition was on the 16th [the day the child was taken by the state]."

The state produced a total of five witnesses. Of these, two worked at the restaurant at which the initial confrontation occurred, one was the police officer who took the child from the father, and two were associated with Children's Services. However, not one of these witnesses had ever seen the child prior to August 16, 1982, and could not testify as to the child's condition at any time prior to that date. Given a total lack of evidence as to how the child acted with the father, outside of the incident at the restaurant, it is difficult to see the relevance of testimony as to how the child responded while in the custody of the other adults *subsequent* to August 16, 1982. There can

be no determination as to whether or not the child's condition or behavior improved or changed as there was nothing with which to compare the later behavior. The fact that he may have shown "improvement" while he was with Children's Services is inconsequential if we do not know how he acted prior to his detention. Indeed, it is not unreasonable to presume that a child might initially exhibit unnatural tendencies when abruptly taken from his father by a uniformed policeman and placed for a considerable length of time in a strange new environment, and then slowly "improve" as he became more comfortable.

While we note our earlier admonition against overturning a verdict on the basis of inadmissible evidence where the judge acts as the factfinder, in this instance the judge stated his belief that the evidence objected to was relevant as to the boy's condition on August 16, 1982. This was erroneous and, accordingly, on this point, appellant's fourth assignment of error is sustained.

## C

Appellant next raises an interesting issue. He argues that the state, in proving its case, is limited to those faults and habits of the custodial parent which are specifically listed in the complaint. This argument is based on R.C. 2151.27 which provides, *inter alia,* that:

"* * * in addition to the allegation that the child is * * *, neglected, [or] dependent, * * *, the complaint must allege the particular facts upon which the allegation * * * is based."

Juv. R. 10(B)(1) requires that the complaint shall:

"State in ordinary and concise language the essential facts which bring the proceeding within the jurisdiction of the court * * *."

R.C. 2151.23(A) states that the juvenile court has exclusive original jurisdiction under the Revised Code:

"(1) Concerning any child who on or about the date specified in the complaint is alleged to be * * * neglected, or dependent; * * *"

The complaint herein did not allege that appellant was drunk at the time the child was taken or that drunkenness in any way adversely affected appellant's ability to care for the child or caused the child to become neglected or dependent. However, evidence that appellant had an odor of alcohol on his breath on August 16, 1982, and that he had previously been arrested for driving while under the influence of alcohol, was admitted over objection. Also admitted was evidence of appellant's apparent destitute condition at the time the child was taken, when such condition was not alleged in the complaint.

Initially, we must note that appellant did not attack the sufficiency of the complaint. Appellant's argument is not that the court lacked jurisdiction over the matter, but that the evidence against appellant must be limited to proving those facts alleged in the complaint.

Prior to 1969, R.C. 2151.27 provided that a complaint was sufficiently definite by simply using the words "neglected" or "dependent" and courts generally upheld the sufficiency of complaints containing such conclusory language. See *In re Anteau* (1941), 67 Ohio App. 117 [21 O.O. 129]; *In re Hayes* (1938), 28 Ohio Law Abs. 154. However, R.C. 2151.27 was amended in 1969 to its present form and in 1975 Juv. R. 10(B) was added.

The Supreme Court, in *In re Hunt* (1976), 46 Ohio St. 2d 378 [75 O.O.2d 450], discussed both Juv. R. 10 and R.C. 2151.27 and held in the first paragraph of the syllabus that:

"A complaint under Juv. R. 10 and R.C. 2151.27 alleging that a child is dependent must state the essential facts which bring the proceeding within the jurisdiction of the court. (Juv. R. 10 and R.C. 2151.27.)"

The basis of both the rule and the statute appear to be twofold. First, in an action involving the possible severance of

custody rights, a respondent to such a complaint is entitled to be apprised of the basis of the state's claim in order to properly prepare a defense. See *In re Fassinger* (1975), 42 Ohio St. 2d 505 [71 O.O.2d 503]. Second, the juvenile court, being a court of limited jurisdiction, must be able to ascertain at an early stage of the proceeding whether or not it has jurisdiction over the subject matter of the claim.

We do not believe that it is the intent of Juv. R. 10(B) to force a complainant to state in the complaint every fact surrounding each incident described. Juv. R. 10(A) states that "[a]ny person" may file a complaint if he feels a child is neglected or dependent and complaints are often filed by non-attorneys. To limit the state in its case to the facts outlined in the complaint would be to hypertechnically construe the Juvenile Rules and would lead, eventually, to unduly long and onerous complaints.

Our view might differ if it could be shown that allegations in the complaint had been intentionally abbreviated and that a party had been "surprised" at trial by a parade of witnesses testifying to matters which had no relation to the facts alleged. However, in this case, it was appellant himself who testified on cross-examination as to his past problems; he cannot now argue that he was surprised by the evidence. We do not find appellant's argument on this issue to be persuasive and, accordingly, cannot sustain the fourth assignment of error on this ground.

D

The appellant next argues that evidence of faults or habits of a custodial parent which are not shown to exist at the time of the complaint is irrelevant in a proceeding to determine neglect or dependency.

There is a clear distinction between "neglect" and "dependency." In order to prove neglect, the state must show that the condition of the child was caused by willful acts of the custodial parent, while the focus of dependency is on the condition of the child, not the fault of the parents. See, *e.g., In re Bibb* (1980), 70 Ohio App. 2d 117 [24 O.O.3d 159]. In such a proceeding, the issues are to be determined as of the date or dates specified in the complaint. R.C. 2151.23(A)(1).[1] Accordingly, in order to be relevant, evidence of habits or faults of the custodial parent must be shown to exist as of the date specified in the complaint.

Even if a habit or fault is shown to exist as of the date or dates specified in the complaint, admissibility is not guaranteed. As stated above, a finding of neglect must be based on a willful act of the custodial parent which causes the child to be neglected. That an individual is an alcoholic does not necessarily mean that the individual's children are neglected. In order to be relevant and admissible, a causal link must be shown by the state between the fault of the parent and the neglected condition of the child. As the United States Supreme Court recently stated:

"The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents * * *." *Santosky* v. *Kramer* (1982), 455 U.S. 745, 753.

The complaint herein detailed a single incident on a single day which led to a Preble County Sheriff's Department employee taking Roy, Jr. from the custody of his father. Pursuant to R.C.

---

[1] The 1969 amendment to R.C. 2151.23(A)(1) would appear to legislatively overrule the holding of *In re Kronjaeger* (1957), 166 Ohio St. 172 [1 O.O.2d 459], which permitted the court to consider the facts as they existed at the time of the hearing. Courts are now less likely to be affected by the best interests of the child, evidence of which is irrelevant and inadmissible at the adjudicatory stage.

2151.23(A)(1), any evidence of the father's past habits which were not shown to exist on or about August 16, 1982, are irrelevant and inadmissible.

During the presentation of the father's case, the court permitted and conducted examination of witnesses on appellant's past alcohol problems, other times the child had been taken from the father in other jurisdictions, and the father's hospitalization. None of the testimony showed that any of the "faults" existed at the date of the complaint.

The state argues that "* * * alcoholism is a disease for which there is no cure." The implication is, of course, that evidence of alcohol problems is eternally admissible in proceedings such as these.

Diane and the guardian *ad litem* argue that:

"* * * hospitalization, alcoholism and other legal difficulties the father has had vis-a-vis his care of the child all have continuing potential bearing on his ability to care for the child at the time in question."

We do not find appellees' respective arguments to be persuasive. There was simply no evidence which tended to prove that the "faults" existed at the time of the complaint, that they had any effect whatsoever on appellant's ability to care for the child, or that the child was adversely affected by the parent's condition on August 16, 1982. Logically extended, appellees' analysis would permit an individual's mistakes to forever haunt him or her in future neglect and dependency proceedings. The burden herein was on the prosecution to show the relevance of this evidence and it failed to do so.

As it is clear from the court's entry that the evidence was relied upon, we must sustain appellant's fourth assignment of error on this ground.

In summary, we hold that hearsay evidence is not admissible at the adjudicatory stage of a neglect/dependency hearing, that evidence relating to the child's behavior after he was taken from the father was not shown to be relevant and is not admissible, that the state is not absolutely limited to the particular facts alleged in the complaint in its presentation of evidence, and that in order to be relevant and admissible, faults of the custodial parent, where neglect is alleged, must be shown to exist on or about the date of the complaint and must be shown to adversely affect the parent's care of the child.

## V

Appellant's fifth assignment of error asserts, again, that the trial court cannot base a decision that a child is neglected or dependent on faults of the custodial parent which were not alleged in the complaint. In our earlier discussion of this issue, we noted that appellant's analysis of R.C. 2151.27 is unduly restrictive. See Section IV(C), *supra*. That discussion also resolves appellant's fifth assignment of error which is hereby overruled.

## VI

Appellant's sixth assignment of error is as follows:

"The trial court erred to the prejudice of the father-appellant in overruling his motion for acquittal made at the close of the State's case."

Initially, we would note that a "motion for acquittal" is used in criminal proceedings and is to be sustained if, after the presentation of evidence on either side is complete, the evidence is insufficient to sustain a conviction of the offense or offenses charged in the indictment, information or complaint. Crim. R. 29. A dependency and neglect proceeding is a civil proceeding and a "motion for acquittal" is improper.

While there is no analogous method specifically detailed in the Juvenile Rules to test the substance of the state's case at the close of the state's evidence, Juv. R. 29(F) provides, in part, that:

"Upon determination of the issues, the court shall:

"(1) If the allegations of the complaint were not proved, dismiss the complaint * * *."

Under Juv. R. 29, then, a "motion to dismiss" would appear to be the procedurally proper device for testing the state's case at the close of the state's presentation of evidence. This coincides with a Civ. R. 41(B)(2) motion to dismiss which is used in civil matters tried without a jury.

The appellant's "motion of acquittal," being improper in a civil case, was properly overruled by the trial court. The distinctions between a motion for acquittal and its civil counterpart are many, the most important being that a criminal defendant waives error in the denial of his or her motion for acquittal made at the conclusion of the state's case where he or she then introduces evidence and, in a jury trial, fails to renew the motion at the conclusion of the case. See, *e.g., State* v. *Davis* (Sept. 1, 1982), Butler App. No. 81-01-0001, unreported.

Accordingly, appellant's sixth assignment of error is overruled.

## VII

Appellant's seventh assignment of error is as follows:

"The trial court erred as a matter of law in finding that the child was dependent under Section 2151.04(C), O.R.C., solely because his father was homeless and destitute where the evidence was that relatives were assisting the father in providing care and support to the child."

This assignment of error is overruled as the court's entry is clearly limited to finding that Roy, Jr. was a *neglected* child, not a dependent child.

## VIII

Appellant's eighth assignment of error alleges that the judgment below is against the manifest weight of the evidence. We agree.

Not one of the state's five witnesses had ever seen either Roy, Jr. or appellant prior to 4:00 p.m. or 5:00 p.m. on August 16, 1982. The uncontroverted evidence is that for the seven to ten days preceding August 16, the child was always clean and well-groomed. Indeed, the only witness who consistently saw the child prior to August 16 and who was apparently not related to appellant, the principal at the elementary school attended by Roy, Jr., stated that the boy appeared to be "average with the other kids" with respect to cleanliness and grooming.

The burden on the state is to prove by *clear and convincing evidence* that the child was in a neglected condition. Unlike dependency, which focuses solely on the condition of the child, in a neglect proceeding the "* * * fault, unfitness or unsuitability of the parent is the crux of the cause and a necessary element in the determination that a child is neglected." *In re East* (1972), 32 Ohio Misc. 65, 66-67 [61 O.O.2d 38]. There must be a finding of culpable acts by the parent which cause the child's neglected condition. Broad, general claims which are not causally tied to the child's condition cannot be the basis of a finding of neglect. As stated in *Bibb, supra,* paragraph three of the syllabus:

"A parent's primary rights to the care and custody of a child are rights that must be protected, and parental custody will be terminated only when necessary for the mental and physical development of the child."

In the case at bar, the state presented no evidence as to the condition of the child at any time prior to the forty-five-minute to one-hour confrontation at the restaurant. This court does not believe that "substantial justice was done" in this case [see *Ancona* v. *Martin* (July 22, 1981), Clermont App. No. 879, unreported] and must sustain appellant's final assignment of error and order a new hearing on the issue of whether Roy, Jr. was a neglected child on or about August 16, 1982.

It is the order of this court that the judgment herein appealed from be, and the same hereby is, reversed and re-

46

manded for further proceedings according to law and not inconsistent with this decision.

*Judgment reversed*
*and cause remanded.*

KOEHLER, P.J., JONES and MOSER, JJ., concur.

MOSER, J., of the Court of Common Pleas of Butler County, sitting by assignment in the Twelfth Appellate District.