**In the Matter of Finlaw**
*[Cite as 7 AOA 53]*

*Case No. 89-CA-0078*
*Greene County, (2nd)*
*Decided September 20, 1990*

*William F. Schenck, Prosecuting Attorney, Greene County Courthouse, 45 N. Detroit Street, Xenia, Ohio 45385, for State of Ohio, Appellee.*

*David L. Pendry, 133 East Market Street, Xenia, Ohio 45385, for Christopher E. Finlaw, Appellant.*

BROGAN, J.

Appellant, Christopher E. Finlaw, appeals from the decision rendered by the Greene County Court of Common Pleas, Juvenile Division, in which Finlaw's probationary operator's license was permanently revoked pursuant to the mandates of R.C. 2903.06 and 4507.16(D).

On July 29, 1989, at approximately 10:30 pm., Finlaw drove his 1977 Dodge van eastbound on Iowa Street in Xenia, Ohio at a high rate of speed. Finlaw failed to stop at a stop sign at the intersection of Montana Drive and Iowa Street and proceeded to drive through the yard of a residence at 403 Montana Drive. Finlaw next drove through the exterior wall of the residence and struck three residents inside. There was no apparent application of the brakes as the van entered the residence nor as it continued moving through the residence, going through several walls. It finally came to rest on the patio at the rear of the residence.

Sonja Evans, one of the occupants of the residence, was killed when the van came through the wall and struck her where she was seated and either propelled her or carried her forward by the force of the vehicle through the several walls. Evans' body was found beneath the van on the patio.

Upon taking Finlaw into custody, the police officers reported that he had a strong odor of alcohol about him. The officers also reported that Finlaw was "thick tongued, mush mouthed and his speech was slurred." Finlaw was unable to successfully perform the field tests which included the finger-to-nose test among others, and further, the officers noted that Finlaw needed support to keep his balance. It was their opinion that Finlaw was "unfit" to drive and that the alcohol had "extreme" affects on him. Due to the fact that the police officers were denied the opportunity, no blood alcohol test nor intoxilyzer was performed.

Finlaw was seventeen (17) at the time of the offense and accordingly the complaint was filed in the Greene County Court of Common Pleas, Juvenile Division, charging Finlaw with two (2) separate counts of being a delinquent child by

virtue of Aggravated Vehicular Homicide, R.C. 2903.06(A) and Assault, R.C. 2903.13(B). The complaint was filed on August 1, 1989 and was later amended by addition, whereby Finlaw was further charged with the following specification:

"The Prosecutor further finds and specifies that Christopher Finlaw was under the influence of alcohol at the time of the commission of the offense."

Appellee, the State of Ohio, filed a motion to transfer Finlaw for criminal prosecution as an adult pursuant to Rule 30 of the Rules of Juvenile Procedure. The motion alleged that Finlaw was fifteen (15) years of age or more at the time of the commission of the offense, that there was probable cause to believe that Finlaw had committed a felony offense and that he was not amenable to care or rehabilitation in any juvenile facilities. The motion for transfer came on for hearing and was denied.

Finlaw subsequently entered an admission and judgment was rendered finding Finlaw guilty of Aggravated Vehicular Homicide, with a specification that he was under the influence of alcohol at the time of the offense.

Finlaw was committed to the legal custody, of the Department of Youth Services for institutionalization for an indefinite term encompassing a minimum period of six (6) months and a maximum period not to exceed the date Finlaw would reach the age of twenty-one (21) years. The court further revoked Finlaw's operator's license and took the period of revocation under advisement for further review to determine whether the permanent lifetime revocation of an operator's license imposed by R.C. 2903.06 and 4507.16 was applicable to proceedings in Juvenile Court. The court subsequently revoked Finlaw's license permanently.

In his first assignment of error, appellant contends that the trial court erred in its application of R.C. 2151.355 by imposing a disposition not authorized by R.C. 2151.355. R.C. 2151.355 states, in part, that:

"(A) If a child is found by the Court to be a delinquent child, the Court may make any of the following Orders of disposition:

"(9) Suspend or revoke the operator's license or temporary instruction permit issued to the child, or suspend or revoke the registration of all motor vehicles registered in the name of the child;"

As noted by appellant, the disposition authority of R.C. 2151.355 authorizes the Juvenile Court to impose sentences on minors who have been adjudicated delinquent with such sentences not exceeding the child's attainment of the age of twenty-one years. In *State v. Grady* (1981), 3 Ohio App. 3d 174, the Court noted that the applicable statute governing the disposition of a child adjudged delinquent is R.C. 2151.355. Further, the Court stated that the determination of disposition must be made by adhering to the options available under this section. The Court went on to say that the broadest option was that provided under R.C. 2151.355(A) (9) (presently 2151.355(A)(10)), which states that the Court can make "... any further disposition that [it] finds proper," but that the exercise of this option was limited to other statutes in the Juvenile Code. See *In re Baker* (1969), 18 Ohio App. 2d 276, at 282, modified on other grounds (1969), 20 Ohio St. 2d 142. None of the provisions in R.C. 2151 permit the permanent lifetime revocation of a juvenile's operator's license, and therefore the court did commit error in permanently revoking Finlaw's operator's license.

Appellant's first assignment of error is well taken.

In this second assignment of error, appellant contends that the trial court erred in its decision that R.C. 4507.16(D) was the controlling statute for disposition of a minor adjudicated as a delinquent by virtue of an admission to a violation of R.C. 2903.06.

R.C. 4507.16(D) provides as follows:

"(D) The trial judge of any court of record, in addition to or independent of all other penalties provided by law or by ordinance, shall permanently revoke the operator's or chauffeur's license or permit or non-resident operating privileges of any person who is convicted of a violation of Section 2903.06 or 2903.07 of the Revised Code or of a municipal ordinance that is substantially similar to Section 2903.07 of the Revised Code if the jury or judge as trier of fact in the case in which the person is convicted finds that the offender was under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, at the time of the commission of the offense."

R.C. 2903.06 states, in part, that:

"(B) Whoever violates this section is guilty of aggravated vehicular homicide, a felony of the fourth degree. If the offender has previously been convicted of an offense under this section or Section 2903.07 of the Ohio Revised Code, Aggravated Vehicular Homicide, is a felony in the third degree.

"If the jury or judge as trier of facts finds that the offender was under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, at the time of the commission of the offense, then the offender's, operator's or chauffeur's license or permit or nonresident operating privilege shall be permanently revoked pursuant to Section 4507.16 of the Revised Code."

The trial court found Finlaw to be delinquent by virtue of his admission to violating the provisions of R.C. 2903.06 and that he was under the influence of alcohol at the time of the commission of the offense. The Court then determined that pursuant to R.C. 4507.16(D) the imposition of the permanent revocation of Finlaw's operator's license was mandated and therefore the court revoked Finlaw's license permanently.

In juvenile court, juveniles found guilty of committing an offense are adjudicated delinquent. *In re Agler* (1969), 19 Ohio St. 2d 70, the court addressed the issue of whether a juvenile case results in an adjudication or a conviction and concluded that the result was an adjudication. The court reasoned that:

"The Juvenile Court stands as a monument to the enlightened conviction that wayward boys may become good men and that society should make every effort to avoid their being attainted as criminal before growing to the full measure of adult responsibility. Its existence, together with the substantive provisions of the Juvenile Code, reflects the considered opinion of society that childish pranks and other youthful indiscretions, as well as graver offenses, should seldom warrant adult sanctions and that the decided emphasis should be upon individual, corrective treatment."

Further, the court stated that "a child is not a criminal by reason of any Juvenile Court adjudication, and civil disabilities ordinarily following conviction do not attach."

In *State v. Fikes* (Aug. 25, 1982), Butler App. No. CA82-03-0029, unreported, the court stated that a juvenile judgment is not a conviction and that if the legislature intended to use a judgment in a juvenile case to equal the effect of a conviction, it would be necessary for such language to be included in the statute. The court in *State v. Lindsay* (Nov. 6, 1980), Richland App. No. 1896, unreported, stated the same premise that the legislature needs to clearly define the statutory language if it intends to have the statute apply to juveniles. The court stated:

"Suffice it to say that if anything is well settled in Ohio, it is that a finding by a juvenile court that a juvenile is delinquent is not 'a conviction of a crime.'

"If it is wise social policy to make acts to constitute a higher degree of crime because of a prior finding of delinquency, that decision is to be made by the legislature, not the courts. A simple change of the statutory language is all that is necessary. The legislature may make that change if it wishes to do so. This court is not going to attempt to make it for them."

Appellee cites *Gebell v. Dollison* (1978), 57 Ohio App. 2d 198, for the proposition that the court acted properly in revocating Finlaw's operator's license permanently. We are not persuaded by this argument. In *Gebell,* the appellate court reversed the trial court's findings that the records of a juvenile could not be used in any manner against him as an adult. In this instance, the defendant had his license revoked for acts he had done as a juvenile as well as for acts he had done as an adult. The appellate court reviewed the controlling section, R.C. 4507.40(K) which deals with the point system for license suspension and found that it specifically allows for the use of juvenile records to determine the suspension sentence. In the case before us, R.C. 4507.16(D) fails to mention anything about the disposition of juveniles and clearly states that anyone convicted of violating Section 2903.06 of the Revised Code while being under the influence of alcohol shall have his/her operator's license permanently revoked. Therefore *Gebell* can be distinguished from the instant case.

*In re Russell* (1984), 12 Ohio St. 3d 304 is also distinguishable from the case at hand. *Russell* involved a juvenile theft and then a subsequent theft offense as an adult. The court determined that a prior adjudication of delinquency predicated on a theft offense constitutes a previous theft conviction under R.C. 2913.02 for the purpose of determining disposition. R.C. 2913.02(B) states, in part, "Whoever violates this section is guilty of theft...." The language used does not speak of a conviction, but rather uses the word "violation." Therefore *Russell* is distinguishable.

Because of the dispositional limitations of R.C. 2151.355 and because delinquency adjudications are not "convictions", the court improperly applied R.C. 4507.16(D) in this matter. Appellant's second assignment is well taken.

Lastly, in appellant's third assignment of error, he contends that the trial court erred in

denying appellant the opportunity for trial by jury in a juvenile proceedings where adult criminal sanctions were imposed at disposition.

Appellant's third assignment of error is moot in light of our disposition of the first two assignments.

Judgment of the trial court will be affirmed in part and reversed in part. We will reverse that part of the court's judgment which permanently revokes Finlaw's operator's license and remand this matter to the trial court for reconsideration of other penalties permitted for juvenile traffic offenders on the issue of license suspension and revocation (e.g. the possible suspension of Finlaw's operator's license until the age of twenty-one years). In all other respects, the judgment of the trial court will be affirmed.

WOLFF, P.J., and WILSON, J., concur.