JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, W.C., Sr.,[1] appeals the trial court's grant of permanent custody of his minor child, W.C., Jr., to the Cuyahoga County Department of Children and Family Services. Finding no merit to the appeal, we affirm the decision of the trial court.
 {¶ 2} In October 2005, the Cuyahoga County Department of Children and Family Services ("CCDCFS" or "the agency") took emergency custody of W.C., Jr., ("the child") following his birth due to concerns that his parents could not care for him because of their mental limitations. The child was adjudicated dependent, and the court granted temporary custody to the agency. CCDCFS placed the child in the same foster home where his biological sister had been adopted and developed a case plan for W.C., Sr. ("Father") and the child's mother, K.C. ("Mother"), which included parenting classes.[2] The child has special medical needs.
 {¶ 3} In October 2006, CCDCFS filed a motion to modify temporary custody to permanent custody. The motion was based on both parents being deemed unsuitable to permanently care for the child. The motion was later withdrawn and temporary custody was extended. The agency refiled its motion for permanent custody in April 2007. *Page 4 
 {¶ 4} The matter proceeded to trial, at which the mother stipulated to the agency's motion for permanent custody and asked to be dismissed from the remainder of the proceedings. The court heard testimony from Father's doctor, mental health nurse, parenting program coordinator, social worker, psychiatry resident, MRDD case manager, and CCDCFS case manager. The court also took testimony from a Cleveland police detective, Father, and Father's sister. The children's guardian ad litem was present at the trial to submit her report and recommendation and gave a brief oral recommendation in support of permanent custody. In November 2007, the court awarded permanent custody of the child to CCDCFS.
 {¶ 5} Father now appeals, raising three assignments of error. In reviewing a trial court's judgment on child custody cases, the appropriate standard of review is whether the trial court abused its discretion. Masters v. Masters, 69 Ohio St.3d 83, 1994-Ohio-483,630 N.E.2d 665. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Miller v. Miller (1988), 37 Ohio St.3d 71,73, 523 N.E.2d 846. In Miller, the court stated that:
 "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Id. at 74, citing Trickey v. Trickey (1952), 158 Ohio St. 9, 13, 106 N.E.2d 772. *Page 5 
 {¶ 6} In his first assignment of error, Father argues that the trial court erred by granting permanent custody to CCDCFS when the decision was not supported by the evidence.
 {¶ 7} R.C. 2151.414 sets forth a two-prong analysis to be applied by the juvenile court for a determination of whether permanent custody should be granted to an agency. The statute requires the court to find, by clear and convincing evidence, (1) one of the factors enumerated in R.C. 2151.414(B)(1)(a)-(d), and (2) an award of permanent custody is in the best interest of the child.
 {¶ 8} As relates to this appeal, R.C. 2151.414(B)(1)(d) focuses on whether the child has "been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." It is undisputed that the child had been in the temporary custody of CCDCFS for over twelve months of a consecutive twenty-two month period. Indeed, the child had been in CCDCFS custody since birth and for two years by the time trial had concluded.
 {¶ 9} Although additional findings were not required, the trial court also found that the child could not or should not be placed with his parents within a reasonable time, and made findings relating to two of the sixteen factors enumerated in R.C. 2151.414(E). The factors set forth in R.C. 2151.414(E) are normally analyzed to make a determination of whether a child cannot be placed with either parent within a *Page 6 
reasonable time or should not be placed with the parents only when the trial court finds that R.C. 2151.414(B)(1)(a) applies.[3]
 {¶ 10} But, in this case, the trial court additionally found that Father had failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home and that Father's mental retardation was so severe that it makes him unable to provide an adequate permanent home for the child pursuant to R.C.2151.414(E)(1) and (2).
 {¶ 11} Father claims that the trial court abused its discretion in finding that he failed to remedy the cause of the removal and that the child could not be placed with him within a reasonable time.
 {¶ 12} To support his position, Father cites the recent Ohio Supreme Court case, In re D.A., 113 Ohio St.3d 88, 2007-Ohio-1105,862 N.E.2d 829, where the Court held that "when determining the best interest of a child under R.C. 2151.414(D) at a permanent-custody hearing, a trial court may not base its decision solely on the limited cognitive abilities of the parents." Id. at syllabus.
 {¶ 13} Although it is in his second assignment of error where Father argues that the trial court erred in finding that permanent custody was in the best interest of *Page 7 
the child, Father relies on In re DA. to support his argument that the trial court incorrectly considered only his mental status under R.C.2151.414(E)(2). Father is mistaken, however, on what the trial court is required to find pursuant to R.C. 2151.414(B)(1); thus, we will discuss the applicability of In re DA. to this case in the next assignment of error.
 {¶ 14} Again, R.C. 2151.414(B)(1) requires a court to determine by clear and convincing evidence that it is in the best interest of the child to grant permanent custody of the child to the agency and that any one of the factors in R.C. 2151.414(B)(1)(a)-(d) applies. Since the trial court correctly concluded that R.C. 2151.414(B)(1)(d) applied to this case, the additional finding that R.C. 2151.414(E)(1) and (2) apply is relevant but not required. In other words, because the trial court correctly concluded that the child had been in agency custody for twelve or more months of a consecutive twenty-two month period, the additional findings that the father "has failed continuously and repeatedly to substantially remedy the condition causing the child to be placed outside the [home]" and that "his mental retardation is so severe that it makes [him] unable to provide an adequate permanent home for the child," are relevant findings, but they are not required findings. Once the trial court found that the first prong of the analysis was satisfied, it could have proceeded directly to a best-interest-of-the-child analysis.
 {¶ 15} Therefore, the first assignment of error is overruled. *Page 8 
 {¶ 16} In the second assignment of error, Father argues that the trial court erred in finding that permanent custody was in the best interest of the child.
 {¶ 17} R.C. 2151.414(D)(1) through (5) sets forth the relevant factors that a court must consider in determining the best interest of the child. These factors include, but are not limited to, the following:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether * * * [it] can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
 {¶ 18} This court has stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. In reMoore (Aug. 31, 2000), Cuyahoga App. No. 76942, citing, In re ShaefferChildren (1993), 85 Ohio App.3d 683, 621 N.E.2d 426; In re C.H., Cuyahoga App. Nos. 82258 and 82852, 2003-Ohio-6854.
 {¶ 19} First, we find that Father's reliance on the supreme court's holding in In re D.A., is misplaced. In that case, as well as in the instant case, the parents had *Page 9 
low IQs, which hampered their ability to function as parents. The supreme court determined that the trial court did not appropriately consider the best interest factors, but instead relied solely upon the parents' limited cognitive abilities. Id. The court stated that R.C.2151.414 "does not permit a parent's fundamental right to raise his or her child to be terminated based on mental retardation alone." Id. at ¶ 37. The court also noted other cases in which a parent's rights were terminated based on limited cognitive abilities, but observed that in those cases, "objective evidence existed to show that the statute was satisfied." Id., citing In re C.E., Butler App. Nos. CA2006-01-015 and CA2006-02-024, 2006-Ohio-4827 (parent needed constant supervision and prompting to meet child's basic needs and had inadequate housing) andIn re King, Fairfield App. No. 05 CA 77, 2006-Ohio-781 (parent consistently relied on others to meet many of her basic needs and lost her housing).
 {¶ 20} In the instant case, CCDCFS presented additional objective evidence besides Father's limited cognitive ability to show that a grant of permanent custody was in the child's best interest, and we find the trial court's determination was supported by the evidence.
 {¶ 21} At trial, the evidence showed that Father's IQ is 59 and he had been diagnosed with depression and schizoaffective disorder. Although Father had many mental health professionals that participated in his treatment, he had a history of noncompliance with taking prescribed medication, had refused to participate in counseling, and had refused to sign a release to allow CCDCFS to review his mental *Page 10 
health records. In addition, he was illiterate and at times unable to care for his hygiene.
 {¶ 22} The parenting instructor testified that although Father was able to follow directions and accomplish basic child care tasks, he had difficulty recognizing and responding to the child's behavioral cues and that it would be necessary for him to reside with another capable adult who could be the primary caregiver of the child. We note that Father lived with Mother, who had agreed to relinquish her rights to the child and thought the child should be adopted by the foster family; thus, she would not be appropriate as a primary caregiver. The parenting instructor also testified that Father failed to successfully complete the parenting program that was part of his case plan.
 {¶ 23} The family's social worker, who worked for a specially designed program to help mentally challenged parents regain custody of their children, testified that she did not recommend reunification of the child with Father due to the child's special medical needs and Father's inability to adequately address those needs.
 {¶ 24} Father's mental health nurse and MRDD case manager both testified that although Father could care for his own basic needs, he was incapable of providing care for a child. Father's mental health doctor, on the other hand, expressed doubts as to Father's ability to care for himself. *Page 11 
 {¶ 25} The testimony showed that the child is doing well in his foster home and is developmentally on track. He has bonded with the foster family and is at the age where he is beginning to interact with his biological sister.
 {¶ 26} Although it is apparent that Father loves his child and desires to care for the child, this court has previously stated, "the mere existence of a good relationship is insufficient. Overall, we are concerned with the best interest of the child, not the mere existence of a relationship." In re R.N., Cuyahoga App. No. 83121, 2004-Ohio-2560, citing In re Holyak (July 12, 2001), Cuyahoga App. No. 78890; see R.C.2151.414(D)(1).
 {¶ 27} As to R.C. 2151.414(D)(2), the child is only two years old and therefore unable to express his own wishes. We also note that the child had been in custody for over a year at the time the motion was filed and had been with the same foster family since birth. See R.C.2151.414(D)(3).
 {¶ 28} Finally, the GAL stated that the child needed a legally secure permanent placement and recommended that permanent custody be awarded to the agency. See R.C. 2151.414(D)(4). Father argues that the agency should have considered placing the child in a permanent planned living arrangement ("PPLA"). We disagree. First, the court lacked the jurisdiction to place the child in a PPLA because the agency had not requested such a placement and the child did not meet the statutory requirements for PPLA. See In re A.B., 110 Ohio St.3d 230,2006-Ohio-4359, 852 N.E.2d 1187. Moreover, a planned permanent living arrangement places *Page 12 
a child in limbo, which can delay placement in a permanent home, and certainly is not in the best interest of a child of such tender years as W.C., Jr., who has a foster family seeking to adopt him.
 {¶ 29} Therefore, we find that the trial court correctly found that permanent custody was in the best interest of the child. The second assignment of error is overruled.
 {¶ 30} In the third assignment of error, Father argues that the trial court erred by allowing inadmissible and prejudicial hearsay.
 {¶ 31} Father argues that the trial court should not have allowed a police detective to testify regarding an allegation of physical abuse Mother made against Father. It is well established, however, that if a party fails to object at the trial court level, that party waives all but plain error. In this case, Father never objected to the detective being called as a witness or to any of his testimony. Thus, we review this assignment of error under the plain error standard.
 {¶ 32} CCDCFS introduced the testimony of a Cleveland police detective, who testified that Mother made a police report against Father. The detective stated that the nature of the report was an allegation that Father threatened to get a gun if Mother tried to move out of the apartment.
 {¶ 33} Even if that portion of the detective's testimony in which he described the nature of Mother's allegation constituted inadmissible hearsay, we do not find any manifest injustice to warrant the use of the plain error doctrine. Where a trial *Page 13 
judge acts as the finder of fact, as in this case, a reviewing court should be reluctant to overturn a judgment on the basis of the admission of inadmissible testimony, unless it appears that the trial court actually relied on such testimony in arriving at its judgment, because the trial judge is presumed capable of disregarding improper testimony.In re Sims (1983), 13 Ohio App.3d 37, 41, 468 N.E.2d 111; In reM.H., Cuyahoga App. No. 80620, 2002-Ohio-2968. Father offers no evidence that demonstrates that the trial judge relied on any of the alleged hearsay in arriving at his decision. Likewise, we find no evidence in the record that overcomes the presumption that the judge disregarded any evidence that was not properly before the court. See In re T.M., Cuyahoga App. No. 83933, 2004-Ohio-5222.
 {¶ 34} Therefore, the third assignment of error is overruled.
 {¶ 35} Accordingly, judgment is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas — Juvenile Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 14 
SEAN C. GALLAGHER, J., and MARY EILEEN KILBANE, J., CONCUR.
[1] The parties are referred to herein by their initials or title in accordance with this court's established policy regarding nondisclosure of identities in juvenile cases.
[2] W.C., Jr. and his sister share the same mother.
[3] R.C. 2151.414(B)(1)(a) states: "The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." *Page 1