OPINION
These appeals arise from the judgments of the Court of Common Pleas of Seneca County, Juvenile Division, terminating the parental rights and responsibilities of Appellants, Angela Ritter, n.k.a. Weatherholt, and Wayne Weatherholt, and granting permanent custody of their two children to Appellee, Seneca County Department of Human Services ("DHS"). Although a separate case number was assigned to each child, the cases were consolidated for trial and have likewise been joined for purposes of this appeal. For the reasons expressed in the following opinion, we affirm the judgments of the trial court.
Appellants' children, Micaiah Weatherholt, d.o.b. April 24, 1990, and Sabteca Ritter, d.o.b. August 29, 1991, were adjudicated dependent and taken into temporary custody by DHS in the summer of 1997 due to allegations of abuse and neglect. Since that time, the children have been living in separate foster homes.
On February 18, 1999, DHS filed a complaint for permanent custody. DHS alleged that the parents had failed to remedy the conditions that had initially caused the agency to take custody of the children and that it would be in Micaiah's and Sabteca's best interest to place them for adoption rather than return them to Appellants' home.
A hearing on the matter commenced in April, 1999. After hearing all evidence presented and taking the matter under advisement, the trial court entered judgment on July 14, 1999, finding, among other things, that Micaiah and Sabteca cannot or should not be placed with either parent within a reasonable time and that granting permanent custody to DHS would be in the children's best interest. Appellants then filed this timely appeal, asserting three assignments of error for our review.
 Assignment of Error I The trial court erred in granting permanent custody of the children to the Seneca County Department of Human Services where there is no indication that the trial court considered all the factors enumerated in O.R.C. [section] 2151.41.4(D)(1) through (5).
Pursuant to R.C. 2151.41.4(B), a trial court may grant permanent custody to a public agency if clear and convincing evidence exists to support the conclusion that such an order would further the best interest of the child and that the child cannot or should not be placed with either parent within a reasonable period of time. R.C. 2151.41.4(D) sets forth the factors that a court must consider in order to determine whether granting permanent custody to a public agency would be in the best interest of the child. This statute states, in relevant part:
 (D) In determining the best interest of a child at a hearing [on the issue of permanent custody] * * * the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem * * *;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
We note, at the outset, that this statute was amended by the General Assembly, effective March 18, 1999, to include several other considerations that the trial court must take into account when addressing the best interest of a child. These include whether the parents have been convicted of or pleaded guilty to various criminal offenses; whether medical treatment or food has been withheld from the child; and whether parental rights have been previously terminated with respect to a sibling. See R.C. 2151.41.4(D)(5); R.C. 2151.41.4(E)(7)-(16). Although Appellants cite to the amended version of R.C. 2151.41.4(D) to support part of their argument, we find that this latest version does not apply since it was not in effect at the time that this permanent custody case arose.
In addressing the question of whether an amended statute should be applied to pending cases, the Supreme Court of Ohio has stated the following:
 The issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply. Upon its face, R.C. 1.48 establishes a threshold analysis which must be utilized prior to inquiry under Section 28, Article II of the Ohio Constitution.
Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, paragraph one of the syllabus.
R.C. 1.48 provides that a statute is to be applied in a prospective manner unless expressly made retroactive. "If the statute does not clearly indicate retroactive application, the statute may only apply to cases arising subsequent to its enactment." Nichols v. Villarreal (1996), 113 Ohio App.3d 343,348-349. Since the statute in this case does not indicate that the legislators intended retroactive application, it is clear that the amended version of R.C. 2151.41.4, which became effective after
the motion for permanent custody was filed, does not apply to the instant matter. Thus, Appellants' argument that the trial court failed to consider the factors contained in R.C. 2151.41.4(D)(5) is without merit.
With that stated, we will now discuss the remainder of Appellants' assertion wherein they contend that the trial court erred because the judgment entry does not specify that the court considered the factors contained in the applicable version of R.C. 2141.414(D), such as the relationship between the children and their parents and foster parents; the wishes of the children and the need for a secure permanent placement.
In support of this argument, Appellants rely on In re Brown
(1994), 98 Ohio App.3d 337. We find this reliance to be misguided. It is true that in Brown, this court stated that parental rights should not be terminated by a vague judgment entry, in which the trial court fails to state that it considered specific statutory criteria. However, in holding that the trial court's failure to produce a more specific judgment entry constituted reversible error, we distinguished Brown from the previous opinion of In the Matter of Kyle Hart (Mar. 9, 1993), Marion App. No. 9-92-47, unreported, where we concluded that the failure to cite a specific statute was not prejudicial when the judgment entry clearly sets forth the facts supporting the decision.
We find the present case to be more analogous to Hart rather than Brown. First, it must be noted that the entry herein does state that the trial court considered R.C. 2151.41.4(D). Moreover, the detailed judgment entry describes various facts that support the court's decision that, pursuant to the factors contained in the statute, divesting Appellants of their parental rights was in the best interest of the children. Accordingly, we reject Appellants' argument that the trial court erred by failing to specifically state that it considered each factor enumerated under the relevant statute.
Appellants' first assignment of error is overruled.
 Assignment of Error II The trial court erred as a matter of law in permitting hearsay testimony into evidence over the objection of counsel.
Neither child testified at the hearing on the matter of permanent custody. However, several witnesses testified as to information that the children had previously relayed about their parents. Appellants now argue that the admission of this evidence was prejudicial, requiring this court to reverse the trial court's decision. We are not persuaded.
Appellants divide the various statements into two separate categories of evidence. The first category consists of those statements made by laypersons such as Sabteca's past and present foster mothers. Specifically, the women testified that the child told them that his parents physically abused him by hitting him and pinching his private parts.
Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 802 generally prohibits the admission of hearsay evidence. According to Juv.R. 34(I), the rules of evidence apply to permanent custody hearings. Thus, hearsay evidence is inadmissible in such a proceeding unless it falls within a recognized exception to the hearsay rule. See In rePiatt (June 29, 1999), Marion App. Nos. 9-99-04, 9-99-10, unreported. Both parties concede that this evidence does not fit into any exception to the hearsay rule.
Nevertheless, that alone does not warrant an automatic reversal, as indicated by this court's previous holding:
 Where a trial judge acts as the fact finder, it is presumed that the judge is capable of disregarding improper testimony. Therefore, unless it appears that the lower court actually relied on the improper testimony in reaching its judgment, a reviewing court should be reluctant to overturn the juvenile court's judgment on a permanent custody issue on the basis of the admission of inadmissible testimony. [Emphasis added.]
Piatt at **5, citing, e.g., In re Sims (1983), 13 Ohio App.3d 37,41.
Having thoroughly reviewed the record in this case, we cannot find that the trial court actually relied upon these particular statements in deciding to terminate Appellants' parental rights. The judgment entry does state that the trial court found that domestic violence was an underlying problem that caused the children to be placed at risk in their parents' presence. However, despite Appellants' statement that there was "very little evidence of domestic violence, other than hearsay," we conclude otherwise.
Indeed, the evidence revealed that the children were initially placed into the custody of DHS while they were residing with their mother at a domestic violence shelter in Fostoria, Ohio. Although the mother testified that she only went to the shelter to get away for a few days because she was embarrassed to tell her husband that she was doing poorly in school, the employees of the shelter stated that they allowed the mother to enter the facility because she revealed that she was afraid of Wayne Weatherholt and that he had been aggressive toward the children. Therefore, since there was other competent evidence of domestic violence, we cannot conclusively find that the trial court relied upon these statements to arrive at its decision.
The second category of evidence that Appellants contend was improperly admitted were those statements made by the children's counselors. Kay Scham, a licensed social worker and counselor with the Family Resource Center, testified that she had been counseling Sabteca for Post Traumatic Stress Disorder and Attention Deficit Hyperactivity Disorder since December 1997. The frequency of the sessions varied from once a week to once every other week. Ms. Scham stated that during the sessions, Sabteca revealed that his parents beat him and that his dad had sexually abused him. The trial court admitted these statements over a continuing objection entered by Appellants' counsel.
Similarly, Donna Wingate, a licensed social worker and therapist who counseled Micaiah for approximately one year, also testified at the hearing. Micaiah was referred to Ms. Wingate for several mental and emotional problems including adjustment disorder, Post Traumatic Stress Disorder, fear and anxiety and a lack of development. Ms. Wingate stated that during the course of his therapy, Micaiah told her that he had experienced physical and sexual abuse from his parents. These statements were also admitted over counsel's objection.
It is apparent that the trial court admitted the evidence pursuant to Evid.R. 803(4), an exception to the hearsay rule, which provides:
 The following are not excluded by the hearsay rule, even though the declarant is unavailable as a witness:
 (4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
In State v. Dever (1992), 64 Ohio St.3d 401, paragraph two of the syllabus, the Supreme Court of Ohio held that:
 Statements made by a child during a medical examination identifying the perpetrator of sexual abuse, if made for purpose of diagnosis and treatment, are admissible pursuant to Evid.R. 803(4), when such statements are made for the purposes enumerated in that rule.
Although the facts in Dever indicated that the child victim was examined for possible sexual abuse by a medical doctor, relevant case law has stated that the rule should also include statements made to psychologists, therapists and social workers. For instance, in State v. Chappell (1994), 97 Ohio App.3d 515, the Eighth District Court of Appeals stated that Evid.R. 803(4) should not be limited to include only those statements made to medical doctors for the purpose of treatment or diagnosis of a physical ailment. "* * * [S]uch a narrow holding would undercut the function of nurses, psychiatrists, therapists and various individuals who treat victims of sexual abuse." Id. at 530.
Moreover, the court stated that a social worker should not beper se excluded from the list of those who are qualified to testify under the rule. The question of whether a social worker should be permitted to testify pursuant to Evid.R. 803(4) depends upon the functions of the witness. If the social worker encountered the victim for the purpose of diagnosis or treatment, then the evidence may be admissible. However, if the statement was made during the course of a fact-finding or investigatory procedure, Evid.R. 803(4) is not applicable. Id. at 531, 534.
In this case, it is clear that Kay Scham and Donna Wingate heard the children's statements during the course of ongoing treatment for emotional, behavioral and mental disorders. Thus, the trial court did not err in admitting the statements over the objections of Appellants' counsel.
Based upon the foregoing, Appellants' second assignment of error is overruled.
 Assignment of Error III The trial court erred as a matter of law when it ruled that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent and when it ruled that the children's return to the home of the parents would be contrary to the best interest of the children and that it is in the best interest of the child that each be placed in the permanent custody of the SCDHS.
When faced with the question of whether to grant permanent custody to a children's services agency, the trial court is guided by R.C. 2151.41.4(B). This statute provides, in pertinent part:
 The court may grant permanent custody of a child to a movant if the court determines at the hearing * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency * * * and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
Thus, if there is no evidence that the children have been abandoned or orphaned, as in this case, the court must apply a two-pronged test to decide whether to divest the parents of their rights and responsibilities. First, the court must consider the best interest of the children. Second, the court must determine whether the children cannot or should not be placed with either parent.
In this case, the trial court found that permanent custody with DHS was in Sabteca's and Micaiah's best interest and that they should not be placed with their parents. Our initial discussion will focus on the issue of the children's best interest and whether the trial court erred in its determination.
As we previously stated, R.C. 2151.41.4(D) mandates that the trial court consider several factors to answer the best interest inquiry, including, by not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Further, R.C. 2151.41.4(D) requires that the trial court's findings be supported by clear and convincing evidence. "Clear and convincing evidence is that which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." In re Weaver (1992), 79 Ohio App.3d 59,64. Our review of the record in this case leads us to conclude that clear and convincing evidence exists to support the trial court's decision. This is especially true in light of the behavioral, emotional and developmental difficulties that the children experience, which become more severe around the time that they visit with their parents.
We now shift our focus to the issue of whether the trial court erred in finding, by clear and convincing evidence that the children cannot or should not be placed with either parent. R.C. 2151.41.4(E) provides a list of twelve factors that a court must consider in order to answer this question. The statute further provides that if one or more of the factors exist, the court must enter such a finding.
In the instant case, the trial court found the following sections of R.C. 2151.41.4(E) applicable:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness * * * of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing [on the issue of permanent custody].
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support * * * the child when able to do so * * *.
Since the statute states that only one of these factors must be present in order for the court to properly enter a finding that the child cannot or should not be placed with his parents, we will concentrate on the court's determination that the parents in this case have failed to regularly support Micaiah and Sabteca when able to do so. The evidence is clear that although the parents were previously ordered to pay child support while the boys were residing in foster care, Appellants have completely ignored the order. This is true even though the mother has worked almost continuously from the time the children were removed from the home. In addition, despite the father's testimony that he exercises approximately five times a week for four to five hours per session, he chooses not to work full-time and when he does go to work as a security guard, it's on a volunteer basis. Thus, this evidence convinces us that the trial court had ample evidence to support its decision that the children cannot or should not be placed with their parents due to an obvious lack of commitment toward these boys.
Based upon the foregoing, Appellants' third assignment of error is overruled.
Having found no error prejudicial to the Appellants herein, in the particulars assigned and argued, the judgments of the trial court are hereby affirmed.
Judgments affirmed.
 HADLEY, P.J., and BRYANT, J., concur.