DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from an Athens County Common Pleas Court, Juvenile Division, judgment that awarded Athens County Children Services (ACCS) permanent custody of Christopher Barnhart, date of birth February 19, 1998.
 {¶ 2} Appellant Melinda S. Lewandowski, the child's natural mother, assigns the following errors:
FIRST ASSIGNMENT OF ERROR:
 {¶ 3} "OHIO REVISED CODE SECTION 2151.011(C) IMPERMISSIBLY SHIFTS THE BURDEN OF PROOF IN VIOLATION OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS RIGHTS, AND THE TRIAL COURT ERRED IN APPLYING IT."
SECOND ASSIGNMENT OF ERROR:
 {¶ 4} "THE TRIAL COURT ERRED IN FINDING CHRISTOPHER BARNHART TO BE A NEGLECTED AND DEPENDENT CHILD."
THIRD ASSIGNMENT OF ERROR:
 {¶ 5} "THE TRIAL COURT ERRED IN ADJUDICATING CHRISTOPHER A NEGLECTED AND DEPENDENT CHILD PREDICATED ON EVENTS OCCURRING AFTER ATHENS COUNTY CHILDREN SERVICES HAD CONTROL OF CHRISTOPHER BARNHART, WHICH CONSTITUTES A DENIAL OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS."
 {¶ 6} Our review of the record reveals the following facts pertinent to the instant appeal.[1] Appellant is the mother of three children: Thomas Fennell III, Samantha Baldridge, and Christopher Barnhart. Christopher is appellant's youngest child.
 {¶ 7} On April 20, 1998, the trial court granted ACCS emergency custody of appellant's three children. On April 21, 1998, ACCS filed a complaint and alleged Christopher to be a dependent child[2] for the following reasons: (1) Christopher lacked a stable home in that appellant did not own a home, but instead shared a trailer-home with another couple who had admitted to being involved in the sexual abuse of another child; (2) Christopher slept on a bare mattress in a room filled with canned food, automobile tires, and a refrigerator; and (3) appellant failed to properly address the child's developmental delays. On May 20, 1998, the trial court adjudicated Christopher to be a dependent child. On August 5, 1998, the trial court granted ACCS temporary custody for six months. On November 24, 1998, the trial court permitted Christopher to be placed with appellant, subject to a one-year protective supervision order.
 {¶ 8} On October 14, 1999, ACCS filed a motion and requested the trial court to extend Christopher's protective supervision. The trial court subsequently extended the protective supervision order until May 24, 2000.
 {¶ 9} On April 19, 2000, ACCS again received an emergency custody order and placed Christopher in foster care. On the same date, ACCS filed a new complaint and alleged that Christopher is an abused, neglected, and dependent child. On May 12, 2000, the trial court adjudicated Christopher to be a neglected and dependent child. On July 6, 2000, the trial court granted ACCS temporary custody through April 19, 2001.
 {¶ 10} On April 17, 2001, ACCS filed a motion to modify the disposition to permanent custody. At the permanent custody hearing, the testimony revealed that appellant (1) had lived in nineteen different locations; (2) had physically assaulted four different people, including her ACCS caseworker; (3) had threatened to kill a former boyfriend's girlfriend; (4) was incarcerated on at least three occasions; (5) suffers from various mental-health afflictions; (6) was terminated from her mental-health counseling due to non-compliance; (7) did not faithfully exercise her visitation; and (8) her visitation ceased in January 2001 following her assault of a caseworker.
 {¶ 11} Before the trial court issued a decision regarding final disposition, this court, on January 23, 2002, reversed the trial court's judgment regarding appellant's son, Thomas. See In re Fennell (Jan. 23, 2002), Athens App. No. 01CA45. We determined, inter alia, that the trial court failed to comply with Juv.R. 29(D) during the adjudication phase. Because the trial court proceedings in In re Fennell also involved Christopher, the complaint involving Christopher was dismissed based upon our decision in In re Fennell.
 {¶ 12} On February 13, 2002, ACCS filed a new complaint and alleged Christopher to be an abused, neglected, and dependent child.[3]
In its complaint, ACCS noted the extensive procedural history of the case and that Christopher has been involved with ACCS since he was two months old. ACCS further alleged that: (1) appellant is in prison with a scheduled release date of May 2002; (2) appellant has been unable to provide a stable home for Christopher; (3) Christopher has been in foster care for the past twenty-two of twenty-two months; (4) appellant has not visited Christopher since January 16, 2001; (5) appellant has not provided financial support for her child; (6) Christopher appears happy with his foster parents and cries when the foster parents return him to his mother; (7) Christopher needs a secure home; (8) appellant has not complied with the court orders and the case plans; (9) appellant has repeatedly moved from various residence without giving the court or ACCS notice; (10) appellant has not attended mental health counseling as recommended; (11) appellant has been involved in verbal and physical confrontations with other adults that have resulted in criminal charges; (12) appellant has been unable to establish independent housing; (13) appellant has had inconsistent visitation with a long lapse in visitation resulting in a deterioration of the parent-child relationship; (14) appellant has failed to secure employment and has no financial means to support her child; (15) appellant has demonstrated little motivation toward reunifying with Christopher; (16) Christopher bites and pinches himself to the point of drawing blood; (17) Christopher throws himself on the floor and bangs his head against concrete; (18) Christopher is in his third foster home because of his behaviors and because he was harming other children; (19) appellant has failed to address Christopher's behavioral problems; (20) Christopher contracted genital warts, but appellant does not know how he contracted them; (21) appellant's mental condition affects her ability to parent; (22) appellant has not complied with her counselor's recommendations and she has failed to attend counseling sessions; (23) appellant has been involved in domestic violence episodes; (24) appellant abuses alcohol; (25) the various households appellant has lived in are filthy; (26) appellant has not provided food, clothing, or shelter for Christopher; (27) appellant had no contact with Christopher from August 1, 2000 through November 7, 2000 and appellant did not attempt to contact ACCS to arrange visitation; (28) in August of 1998, appellant lost custody of Samantha; and (29) appellant has threatened to kill a former boyfriend's girlfriend.
 {¶ 13} On March 7, 2002, the trial court held an adjudicatory hearing. At the hearing, all of the parties stipulated to the hearing transcripts from the previously dismissed case.
 {¶ 14} On March 12, 2002, the guardian ad litem, Joy H. Creighton, filed her report. In her report, the guardian noted that (1) since Christopher's first removal from the home, appellant has been in jail four separate times; (2) Christopher is emotionally fragile and exhibits erratic behavior; (3) the foster parent noted that Christopher becomes angry, cries, and screams, sometimes for several hours; (4) sometimes, Christopher bites himself; (5) Christopher is receiving treatment for bipolar disorder and possible post traumatic stress disorder; and (6) appellant has not been consistent with her visitation. The guardian expressed her concern that Christopher's behavior would worsen in an unstable environment. The guardian thus recommended that ACCS be awarded permanent custody so that Christopher can be placed in a loving, stable home in which to grow and develop.
 {¶ 15} On March 22, 2002, the trial court determined that Christopher is a neglected and dependent child. Neither party requested findings of fact or conclusions of law, and the trial court did not issue specific factual findings or conclusions of law. ACCS subsequently dismissed the abuse allegation, and the trial court continued temporary custody pending the dispositional hearing.
 {¶ 16} On April 22, 2002, the trial court granted permanent custody of Christopher to ACCS. The trial court explicitly determined that Christopher's best interest would be served by granting ACCS permanent custody. The court noted that Christopher was first placed in ACCS's custody in April of 2000 and that R.C. 2151.414(B)(1)(d) potentially did not require the court to consider whether Christopher could not or should not be placed with one of the parents within a reasonable time. Nevertheless, the court considered R.C. 2151.414(E). The court specifically examined R.C. 2151.414(E)(1), (2), (3), (4), (10), (14), (15), and (16), and determined that Christopher cannot be placed with either parent within a reasonable time or should not be placed with either parent.
 {¶ 17} The court further determined that ACCS made reasonable efforts to reunite the family. The court noted that ACCS provided the following services: (1) foster care; (2) referrals to Beacon School (3) genetic testing for behavioral problems; (4) referrals for testing for genital warts; (5) drug and alcohol assessments; (6) efforts to obtain HUD vouchers; (7) play groups for the child; (8) medical, psychiatric, and counseling referrals; and (9) case management. The trial court determined that ACCS's efforts "did not prevent or eliminate the need for removal because of the parents' failure or refusal to comply with the case plan despite continuous efforts to obtain their compliance, the continued incarceration of [appellant], the instability of her home situation due to multiple partners, the continued cohabitation of [the father] with Crystal Conkey, and [the father's] violent temper."
 {¶ 18} On April 29, 2002, the father filed a request for written findings of fact and conclusions of law. On May 9, 2002, the trial court issued findings of fact and conclusions of law. In its findings of fact, the court noted that appellant has had no contact with Christopher since January 16, 2001. The court thus concluded that any mother-child bond has been severed. The court further found that Christopher has established a loving, caring, parent-child relationship with his foster parents. The trial court also determined that appellant cannot provide a legally secure permanent placement for Christopher. The court noted that appellant has lived at numerous places, has had numerous serious relationships, and has not introduced her children to any of the men she intended to marry, except for Christopher's father. The court also noted that appellant has been incarcerated frequently, precluding her from being able to care for Christopher and to maintain the bonds necessary to raise a child. The court further noted that appellant has not attempted to contact Christopher since January 16, 2001, even though she was released from jail in September of 2001.
 {¶ 19} The trial court also noted that at the time of the permanent custody hearing, March 12, 2002, Christopher had been in ACCS's custody for approximately twenty-three months. The court determined that Christopher needs a legally secure permanent placement which cannot be achieved without a grant of permanent custody. The court thus determined that Christopher's best interests would be served by granting ACCS permanent custody.
 {¶ 20} Appellant filed a timely notice of appeal.
 I {¶ 21} Initially, we note that appellant does not challenge the trial court's permanent custody dispositional order. Rather, appellant focuses her arguments on the trial court's determination that Christopher is a neglected and dependent child.
 {¶ 22} In her first assignment of error, appellant asserts that the trial court erred by finding Christopher to be neglected and dependent based upon a finding of abandonment, pursuant to R.C.2151.011(C).[4] Appellant contends that R.C. 2151.011(C) is unconstitutional. Specifically, appellant asserts that the statute violates her procedural and substantive due process rights by creating a presumption that a parent has abandoned a child if the parent does not visit with or maintain contact with a child for ninety days. Appellant argues that the presumption contained in R.C. 2151.011(C) effectively shifts the burden of proof to the parent, in violation of the parent's procedural and substantive due process rights. We disagree with appellant.
 {¶ 23} First, we note that appellant did not request the trial court to issue findings of fact and conclusions of law with respect to the court's decision finding Christopher to be a neglected and dependent child. Civ.R. 52 provides that "judgment may be general for the prevailing party unless one of the parties in writing requests otherwise." The failure to file a timely request for findings of fact and conclusions of law waives the right to challenge the trial court's lack of an explicit finding with respect to an issue. See Pawlus v. Bartrug (1996),109 Ohio App.3d 796, 801, 673 N.E.2d 188; Wangugi v. Wangugi (Apr. 12, 2000), Ross App. No. 2531; Ruby v. Ruby (Aug. 11, 1999), Coshocton App. No. 99 CA 4. "[W]hen a party does not request that the trial court make findings of fact and conclusions of law under Civ.R. 52, the reviewing court will presume that the trial court considered all the factors and all other relevant facts." Fallang v. Fallang (1996), 109 Ohio App.3d 543,549, 672 N.E.2d 730.
 {¶ 24} Second, in the case at bar appellant's argues that the trial court relied upon an allegedly unconstitutional statute, R.C.2151.011(C), to find her son neglected and dependent. We note that the trial court's order states that Christopher is a neglected and dependent child. The court did not, however, provide or identify specific reasons in support of its finding. The trial court did explicitly note, however, that its neglect and dependency finding was not based on R.C. 2151.011(C).
 {¶ 25} Third, we note that appellant failed during the trial court proceeding to argue that R.C. 2151.011(C) is unconstitutional. Generally, an appellate court may not consider any error that a party failed to raise during the trial court proceeding, including an attack on the constitutionality of a statute.[5] In the case sub judice, appellant failed to properly raise this issue. Consequently, we find that appellant has waived this issued for purposes of appeal.
 {¶ 26} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II {¶ 27} In her second assignment of error, appellant asserts that the record does not contain sufficient evidence to support the trial court's finding that Christopher is a neglected and dependent child. Appellant claims that the record is "bereft of evidence that [the child] was without proper care during the time period between April of 2000 and the date of the complaint." Appellant further argues that the trial court erroneously determined that appellant abandoned her child.
 {¶ 28} First, for the reasons stated under our discussion of appellant's first assignment of error, we find that appellant's argument that the trial court determined that appellant abandoned her child to be without merit. As we noted in our discussion, the trial court did not rely on R.C. 2151.011(C) and the abandonment definition as a basis for its decision.
 {¶ 29} Second, we believe that the record contains ample evidence to support the trial court's finding that the child is a neglected and dependent child. R.C. 2151.03(A) defines a "neglected child" as a child:
 {¶ 30} "(1) Who is abandoned by the child's parents, guardian, or custodian;
 {¶ 31} "(2) Who lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian;
 {¶ 32} "(3) Whose parents, guardian, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being;
 {¶ 33} "(4) Whose parents, guardian, or custodian neglects the child or refuses to provide the special care made necessary by the child's mental condition * * *."
 {¶ 34} R.C. 2151.04(C) defines a dependent child as a child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship."
 {¶ 35} To determine whether a child is neglected or dependent, the date on which neglect or dependency "existed must be alleged in the complaint, and the trial court must determine that the circumstance(s) which support a finding of dependency [or neglect] existed as of the date or dates alleged in the complaint." In re Rowland (Feb. 9, 2001), Montgomery App. No. 18429; see, also, R.C. 21151.23(A)(1); In re Sims
(1983), 13 Ohio App.3d 37; In re Hay (May 31, 1995), Lawrence App. No. 94CA23.
 {¶ 36} When a court considers the issue of whether a child is dependent, the focus is not directly upon the conduct of the parent, but upon the child's condition and environment. See In re Pitts (1987),38 Ohio App.3d 1, 525 N.E.2d 814. The parent's conduct may become relevant in a dependency determination "insofar as that parent's conduct forms a part of the environment of [the] child. As a part of the child's environment such conduct is only significant if it can be demonstrated to have an adverse impact upon the child sufficiently to warrant state intervention." In re Burrell (1979), 58 Ohio St.2d 37, 39, 388 N.E.2d 738.
 {¶ 37} R.C. 2151.35(A) requires neglect or dependency to be established by clear and convincing evidence. The Supreme Court of Ohio has defined "clear and convincing evidence" as
 {¶ 38} "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Haynes (1986), 25 Ohio St.3d 101, 103-04,495 N.E.2d 23; see, also, State v. Schiebel (1990), 55 Ohio St.3d 71,74, 564 N.E.2d 54.
 {¶ 39} When an appellate court examines a trial court's judgment to determine whether that judgment is based upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel, 55 Ohio St.3d at 74. If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. Id. Furthermore, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id. Moreover, deferring to the trial court on matters of credibility is "crucial" in cases involving children, "where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis v. Flickinger (1997),77 Ohio St.3d 415, 418, 674 N.E.2d 1159.
 {¶ 40} In the case at bar, we find that the record contains ample competent and credible evidence to establish that Christopher is neglected and abused as of the dates alleged in the complaint. The complaint alleges facts establishing neglect and dependency as far back as 1998. The evidence reveals that: (1) appellant has been unable to provide a stable home for Christopher; (2) appellant has been unable to provide a clean and nurturing environment for Christopher; (3) appellant has been incarcerated four times since Christopher's birth; (4) appellant has not satisfied or attempted to satisfy Christopher's developmental, psychological, or emotional needs; (5) appellant's mental health issues interfere with her ability to adequately parent; (6) appellant has not exhibited a devoted interest in parenting Christopher; (7) appellant has displayed a physically violent temper in Christopher's presence; (8) appellant provides no financial support for Christopher; (9) appellant attempted to commit suicide in Christopher's presence; and (10) appellant had been engaged to three different men, but introduced only one of those men to Christopher.
 {¶ 41} Thus, we believe that the trial court properly concluded that Christopher is a neglected and dependent child. The evidence reveals that appellant (1) failed to provide adequate parental care; (2) failed to address Christopher's behavioral problems; and (3) failed to provide Christopher with a stable home. Additionally, the evidence reveals that Christopher had been living in homes unfit for habitation while in appellant's care, and that appellant had been unable to care for her child due to her incarceration. Therefore, we conclude that sufficient competent and credible evidence supports the trial court's decision to find that Christopher's condition or environment warrants the state in assuming his guardianship.
 {¶ 42} Although much of the evidence relating to the conditions and environment concerned what has occurred in the past, as we stated inIn re Burchfield (1988), 51 Ohio App.3d 148, 156-57, 555 N.E.2d 325: "`[T]he child does not first have to be put into a particular environment before a court can determine that [the] environment is unhealthy or unsafe. * * * The unfitness of a parent, guardian or custodian can be predicted by past history.'" (quoting In re Bishop (1987),36 Ohio App.3d 123, 126, 521 N.E.2d 838) (citations omitted). Furthermore, courts have recognized that:
 {¶ 43} "`* * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent]. * * * The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm.'"Bishop, 36 Ohio App.3d at 126 (quoting In re East (1972), 32 Ohio Misc. 65,69, 288 N.E.2d 343, 346).
 {¶ 44} In the case sub judice, appellant's past and present behaviors provided the trial court with a sufficient basis on which to determine that appellant is not fit to care for her child.
 {¶ 45} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 III {¶ 46} In her third assignment of error, appellant asserts that the trial court's finding that her son is a neglected and dependent child violates her procedural and substantive due process rights. Specifically, appellant contends that the court relied upon events that occurred after ACCS had control of the child. We disagree with appellant that her due process rights were somehow violated.
 {¶ 47} The United States Supreme Court has recognized that due process safeguards apply to adjudicatory hearings. See In re Gault
(1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527. At the hearing, the parent is entitled to the right to notice, the right to counsel, the right of confrontation. Id.
 {¶ 48} Our review of the record reveals that appellant was afforded all of the foregoing due process rights. Appellant received notice of the February 2002 complaint; she was present at the adjudicatory hearing on the complaint; she agreed to the adjudication phase proceeding on the basis of the transcripts from the permanent custody hearing held in the previously dismissed case; she was afforded counsel at all stages of the proceedings; and she was afforded the right to confront witnesses. We fail to see how the trial court, by permitting ACCS to file a new complaint after a dismissal of the original complaint, deprived appellant of her due process rights.
 {¶ 49} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J., Kline, J. Evans, J.: Concur in Judgment 
Opinion.
[1] We have also included facts set forth in our prior opinion involving Christopher's half-brother, Thomas Fennell III. See Inre Fennell (Jan. 23, 2002), Athens App. No. 01CA45.
[2] ACCS also filed complaints that alleged Thomas and Samantha to be dependent children.
[3] The record on appeal does not contain any of the filings from the previously dismissed case, except for the permanent custody hearing transcripts.
[4] {¶ a} R.C. 2151.011(C) provides as follows:
{¶ b} For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days.
[5] Courts may, however, in some circumstances consider constitutional challenges to the application of statutes when to the rights and interests involved warrant consideration. See In re M.D. (1988),38 Ohio St.3d 149, 527 N.E.2d 286.